# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BAYSTATE HEALTH, INC.,** | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No.** |
| v. | ) |
| | ) **Jury Trial Demanded** |
| **JP MORGAN CHASE & CO.,** | ) |
| **Defendant.** | ) |
| | ) |

## CIVIL COMPLAINT

Plaintiff, BAYSTATE HEALTH, INC., (hereinafter "Baystate"), by its attorneys, Kennedys CMK LLP, as and for its Complaint against Defendant JP MORGAN CHASE & CO. (hereinafter "Defendant") alleges as follows:

## INTRODUCTION

1. Business Email Compromise/Email Account Compromise (BEC) is a sophisticated scam that targets both businesses and individuals who perform legitimate transfer-of-funds requests. The scam is frequently carried out when an individual compromises legitimate business or personal email accounts through social engineering or computer intrusion to conduct unauthorized transfers of funds.

2. According to the Federal Bureau of Investigation (FBI), the BEC scam has been reported in all 50 states and 177 countries, with over 140 countries receiving fraudulent transfers.[1] In addition, between October 2013 and December 2022, the FBI estimates that there was approximately 50,871,249, 501 in losses associated with BEC scams.[2]

---

[1] https://www.ic3.gov/Media/Y2023/PSA230609

[2] *Id.*

3. Upon information and belief, Defendant holds itself out to be a sophisticated financial institution, and is well aware of BEC and is on notice on the manners in which these fraudulent acts are committed.

4. In fact, Defendant has a "Business Email Compromise Playbook" through which it purports to "help our clients combat BEC through ongoing education, data-driven payment screening and attempted recovery of funds, among other efforts." [3]

5. This is an action for negligence arising from Defendant's failure to act when alertered to a continuing BEC fraud that resulted in the loss of hundreds of thousands of dollars.

6. Here, Defendant failed to secure and prevent the withdrawal of approximately $420,000.00 of Baystate Health, Inc.'s funds (the "Baystate Funds") that were wired, as a result of a BEC scam, to a bank account maintained by Defendant (the "Fraudulent Account").

7. On information and belief, at all times relevant herein, Defendant knew or should have known that the Fraudulent Account to which the Baystate Funds were wired was operated and controlled by a criminal actor.

8. On information and belief, at all relevant times herein, Defendant had or should have had actual knowledge of an intended or apparent misappropriation of the Baystate Funds from the Fraudulent Account.

9. At all relevant times herein, Defendant was under a duty to prevent the Baystate Funds from being misappropriated from the Fraudulent Account.

10. At all relevant times relevant herein, Defendant's failure to act to prevent the intended, apparent and/or actual misappropriation of the Baystate Funds from the Fraudulent Account constituted a breach of duty.

---

[3] https://www.jpmorgan.com/content/dam/jpm/commercial-banking/insights/cybersecurity/defending-against-business-email-compromise.pdf

11. Defendant's failure to act to prevent the intended or apparent misappropriation of the Baystate Funds from the Fraudulent Account constitutes negligence under Massachusetts Law.

## THE PARTIES

12. Plaintiff, Baystate Health, Inc., is a noncorporation organized and existing pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business located at 759 Chestnut Street, Springfield, MA 01199.

13. Defendant, JP Morgan Chase & Co. ("Defendant"), is a corporation organized and existing pursuant to the laws of the State of New York, with an office and place of business located at 383 Madison Avenue, New York, NY 10017.

## JURISDICTION AND VENUE

14. This Court has jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity between the parties and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

15. This Court has jurisdiction over the defendant because all of the operative facts arise from Defendant's regularly and systematically conducting business in the Commonwealth of Massachusetts.

16. Defendant is a non-resident foreign corporation conducting business generally within the Commonwealth of Massachusetts.

17. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §1332(b)(2) as this is the district in which a substantial part of the events or omissions giving rise to the claim occurred.

## **ALLEGATIONS OF FACT**

18. In or about November 2022, Baystate entered into a settlement agreement with a counterparty ("counterparty") whereby Baystate was to wire to the counterparty's bank account $700,000.

19. Unbeknownst to Baystate, a criminal actor engaged in a BEC scam through which it compromised the email account of the counterparty to the settlement agreement, impersonated the counterparty, and directed that the Baystate Funds to be deposited via wire transfer into the Fraudulent Account, and not to an account controlled by the counterparty.

20. On November 25, 2022, Baystate initiated the $700,000 wire transfer from a Baystate bank account at Bank of America ("BOA"), and ostensibly to the counterparty.

21. On or about December 19, 2022, the counterparty advised Baystate that its email account had been compromised. At this time, Baystate discovered that the Baystate Funds had not been wired to a bank account held by the counterparty, but instead to the Fraudulent Account.

22. On or about December 20, 2022, a fraud claim was submitted by Baystate's bank, BOA to Defendant, notifying Defendant to the fact that the Baystate Funds has been wired to an account controlled by a hacker/criminal actor (i.e., the Fraudulent Account) as a result of a fraud perpetrated by the hacker/criminal actor.

23. As soon as Defendant was notified by BOA of this event, Defendant should have taken immediate action to flag the Fraudulent Account as fraudulent and prevent the withdrawal of any money from it.

24. Defendant failed to take such action.

25. As a result, Defendant allowed funds to be withdrawn from the Fraudulent Account by the criminal actor despite the fact that Defendant had been told that the Baystate Funds has been wired to an account controlled by a hacker/criminal actor as a result of fraud.

26. Defendant has not denied to Baystate that the funds were withdrawn from the Fraudulent Account after it was informed by BOA that the account was controlled by a hacker/criminal actor. Defendant had a duty to delay and/or prevent the withdrawal of any funds from the Fraudulent Account.

27. Defendant breached this duty.

28. As a result of this breach, Baystate has suffered injury.

29. By way of example and not limitation, on or about January 13, 2023, the United States Secret Service (the "USSS") was notified of the fraudulent transfer and contacted Defendant, with Defendant advising that only $281,543.74 of the Baystate Funds remained in the Fraudulent Account.

30. On information and belief, based on Defendant's representation to the USSS that $281,543.74 remained in the Fraudulent Account, the United States Attorney's Office (the "USAO") in Boston, Massachusetts, issued a Federal Seizure Warrant to Defendant for all remaining funds in the Fraudulent Account.

31. On information and belief, in response to the USAO's Federal Seizure Warrant, and notwithstanding its representation to the USSS that $281,543.74 remained in the Fraudulent Account, Defendant advised the USAO that only approximately $76,000.00 remained in the Fraudulent Account and was available for seizure (the "Seized Funds").

32. The Seized Funds were seized by the USAO and and were returned to Baystate, minus administrative fees.

33. On information and belief, Defendant permitted at least $205,542.74 of the Baystate Funds to be transferred to a criminal actor after Defendant was put on notice of the Fraudulent Account.

34. Subsequent to the USAO's execution of the Seizure Warrant, Baystate contacted Defendant to inquire why a criminal actor was permitted to withdraw at least

$205,542.74 of the Baystate Funds from the Fraudulent Account subsequent to the Fraudulent Account being flagged by internal bank investigators and subject to investigation by the USSS.

35. In response to Baystate's inquiry, Defendant wired $205,542.74 to Baystate without offering any explanation as to the source of the funds, the total amount transferred from the Fraudulent Account after it was restrained, or other transactions made in connection with the Baystate Funds in the Fraudulent Account.

36. To date, Defendant has not offered any explanation as to the whereabouts of approximately $420,000 of the Baystate Funds.

37. On information and belief, some or all of the aforementioned funds have been negligently transferred to a criminal actor.

## COUNT I – NEGLIGENCE

38. Baystate re-avers and re-alleges paragraphs 1 through 37 above as if fully set forth herein.

39. At all times material hereto, Defendant had a duty to operate its business in a reasonably careful and safe manner and to take reasonable actions to safeguard funds maintained in its institution, including the transfer of such funds.

40. Defendant had sufficient knowledge that a criminal actor was attempting to disburse, dissipate and/or disappear the Baystate Funds from its Fraudulent Account, which was flagged as fraudulent by Defendant.

41. Defendant breached its duty to Baystate in one or more of the following ways:

   a. By failing to exercise reasonable care in securing the Baystate Funds;

   b. By failing to exercise reasonable care in allowing a criminal actor to establish and control an account at Defendant's bank;

    c. By failing to exercise reasonable care in providing adequate security to protect against a criminal actor's theft and disbursement of the Baystate Funds that were entrusted to Defendant's possession and care;

    d. By failing to anticipate and/or prevent any foreseeable harmful acts of a third person with respect to Baystate Funds;

    e. By failing to take appropriate measures to protect Baystate from a third-person's harmful acts;

    f. By failing to have reasonable policies and procedures for securing the Baystate Funds;

    g. By failing to exercise reasonable care in monitoring the status of the Baystate Funds that were entrusted to its possession and care;

    h. By failing to exercise reasonable care in securing the Baystate Funds after notice was provided regarding the Fraudulent Account;

    i. By failing to exercise reasonable care in securing the Baystate Funds after Defendant had confirmed that the Fraudulent Account had been restrained;

42. Defendant knew or should have known of the risk of disbursement of the Baystate Funds if it failed to exercise reasonable care due to protect such Baystate Funds.

43. As a direct and proximate result of Defendant's negligence, Baystate suffered damages up to the approximate amount of $420,000.00.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Baystate Health, Inc., requests that this Court grant the following relief:

    A. Judgment in favor of the Plaintiff, with accompanying damages in an amount to be determined at trial.

  B. Pre-judgment interest at 12% per annum from the date of this filing and post-judgment interest as allowed by law;

  C. Recoverable costs associated with bringing this lawsuit; and

  D. Such further relief, as the Court deems just and proper.

## JURY DEMAND

Plaintiff, Baystate Health, Inc., hereby demands a trial by jury to all matters so triable.

Dated: August 26, 2024

By: */s/Daniel S. Marvin*
   Daniel S. Marvin, Esq. (Bar no. 706787)
   Kennedys CMK LLP
   570 Lexington Avenue, 8th Floor
   New York, NY 10021
   Telephone: 646-625-4030
   Email: Daniel.Marvin@kennedyslaw.com

   ***Counsel for Baystate Health, Inc.***